* * *

"Although the Board is pleased that the changes in value during the second quarter of 2006 of the REIT portfolio, the OMSR's and the retained interests in securitizations were within expectations as described in the Company's Form 10-Q for Q1 2006, the Board is also acutely focused on the negative aspects of the net book value volatility inherent in the OFS OMSR's and retained interests in securitizations, despite the fact they are non-cash charges. *As stated previously, the Board authorized hedging program for OMSRs and residuals to commence during the second quarter of 2006. Hedging will continue to be utilized as a tool to curtail balance sheet volatility when proper pricing opportunities present themselves.*

* * *

Mr. Zimmer went on to say, "The competition in mortgage originations continued throughout the second quarter and now into the third quarter. But, in addition to the previously announced reductions in duplicative or underperforming personnel at OFS, which will result in over $3.5 million in annualized savings, the reduced borrowing costs the Company announced in the second quarter have now all been implemented and should save OFS approximately $3.5 million per year in the future. Finally, *we believe that OFS financial results will benefit on an ongoing basis from the capital markets expertise that the REIT management team is rigorously applying to the OFS securitization strategy.*" [Emphasis added.]

47.    Also on August 8, 2006, Opteum filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by Defendants Zimmer and Cauley, and reaffirmed the Company's financial results previously announced. The Company's 10-Q also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶42, *supra*. Additionally, the Company, in relevant part, stated:

### Critical Accounting Policies

Opteum's accounting policies are described in Note 1 to the Consolidated Financial Statements. Opteum has identified the following accounting policies that are critical to the presentation of our financial statements and that require critical accounting estimates by management.

41

*Opteum's financial statements are prepared in accordance with U.S. generally accepted accounting principles ("GAAP").* These accounting principles require Opteum to make some complex and subjective decisions and assessments. Its most critical accounting policies involve decisions and assessments which could significantly affect its reported assets and liabilities, as well as its reported revenues and expenses. *Opteum believes that all of the decisions and assessments upon which its financial statements are based were reasonable at the time made based upon information available to it at that time.*

\* \* \*

## Interim Financial Statements

*The accompanying interim financial statements reflect all adjustments, consisting of normal recurring items that, in the opinion of management, are necessary for a fair presentation of the Company's financial position, results of operations, statement of stockholders' equity and cash flows for the periods presented.* These interim financial statements have been prepared in accordance with disclosure requirements for interim financial information and accordingly, they may not include all of the information and footnotes required by U.S. generally accepted accounting principles ("GAAP") for annual financial statements. The operating results for the interim period ended June 30, 2006, are not necessarily indicative of results that can be expected for the year ended December 31, 2006. The operating results of the interim period ended June 30, 2005, do not include the results of OFS, as the merger closed in November 2005. The financial statements included as part of this Form 10-Q should be read in conjunction with the financial statements and notes thereto included in the Company's Annual Report on Form 10-K for the year ended December 31, 2005.

## Basis of Presentation and Use of Estimates

*The accompanying consolidated financial statements are prepared on the accrual basis of accounting in accordance with GAAP.* The preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Significant estimates affecting the accompanying financial statements include the fair values of MBS, the prepayment speeds used to calculate

42

amortization and accretion of premiums and discounts on MBS, the deferred tax liability valuation, the valuation allowance on mortgage loans held for sale, the valuation of retained interests, trading and the fair value of mortgage servicing rights.

## Consolidation

The accompanying June 30, 2006, consolidated financial statements include the accounts of Opteum and its wholly-owned subsidiary, OFS, as well the wholly-owned and majority-owned subsidiaries of OFS. All inter-company accounts and transactions have been eliminated from the consolidated financial statements. The financial statements for June 30, 2005, do not include the results of OFS, as the merger was finalized in November 2005.

* * *

## Evaluation of Disclosure Controls and Procedures

*The Company maintains disclosure controls and procedures* that are designed to ensure that information required to be disclosed in the Company's Exchange Act reports is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and that such information is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure based closely on the definition of "disclosure controls and procedures" in Rule 13a-15(e). In designing and evaluating the disclosure controls and procedures, management recognized that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives and management necessarily was required to apply its judgment in evaluating the cost-benefit relationship of possible controls and procedures.

*As of the end of the period covered by this report, the Company carried out an evaluation, under the supervision and with the participation of the Company's management, including the Company's Chief Executive Officer and the Company's Chief Financial Officer, of the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based on the foregoing, the Company's Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were effective.*

## Changes in Internal Controls over Financial Reporting

There were no significant changes in the Company's internal control over financial reporting that occurred during the Company's most recent fiscal quarter that have materially affected or are reasonably likely to materially affect, the Company's internal control over financial reporting. [Emphasis added.]

48.    On November 8, 2006, the Company issued a press release entitled "Opteum Inc. to Delay Filing Third Quarter Form 10-Q; Restate First and Second Quarter Financial Statements; Postpone Third Quarter Earnings Call; Previously Reported Year-to-Date Pre-Tax Results Estimated to Be Reduced by Less Than $1 Million after Restatement." Therein, the Company, in relevant part, stated:

> Opteum Inc. (NYSE:OPX) ("Opteum" or the "Company"), a real estate investment trust ("REIT") that operates an integrated mortgage-related securities investment portfolio and mortgage origination platform, today *announced that its Quarterly Report on Form 10-Q for the quarter ended September 30, 2006, will be delayed and that it will restate its consolidated financial statements for the quarters ended March 31, 2006, and June 30, 2006, due primarily to the application of an accounting policy by the Company's subsidiary, Opteum Financial Services, LLC ("OFS"), that was not in accordance with U.S. generally accepted accounting principles ("GAAP").*
>
> Although the Company's review of the full legal, accounting and tax impact of this accounting policy is ongoing, *the Company presently believes that, once restated, its consolidated results of operations before income taxes for the six month period ended June 30, 2006, will be reduced by less than $1 million from the Company's year-to-date consolidated results of operations before income taxes previously reported.* The Company presently anticipates an offsetting increase to the Company's consolidated results of operations before income taxes for the quarterly period ended September 30, 2006.
>
> *The previous accounting policy relates to the manner in which OFS accounts for changes in the fair value of interest rate lock commitments ("IRLCs").* Under Statement of Financial Accounting Standards No. 133 - Accounting for Derivative Instruments and Hedging Activities ("SFAS No. 133"), *IRLCs are to be recorded on the Company's consolidated balance sheet at fair value with changes in fair value to be reflected in the Company's current period results of operations. OFS' prior*

> *accounting policy resulted in a misapplication of SFAS No. 133, thereby generating non-cash, short-term timing differences that overstated earnings in the first quarter of 2006 and understated earnings in the second quarter of 2006.* Proper application of SFAS No. 133 would not, however, have changed the amount of dividends declared by the Company year-to-date. Further, the Company's dividend policy of declaring dividends based on REIT taxable income remains unchanged.
>
> In light of the foregoing, *the Company's consolidated financial statements, including the Company's consolidated balance sheet, statement of operations, statement of stockholders' equity, statement of cash flows and the notes thereto, as of, and for the periods ended, March 31, 2006, and June 30, 2006, should no longer be relied upon.* [Emphasis added.]

49.    On December 20, 2006, the Company issued a press release entitled "Opteum Inc. Reports Third Quarter 2006 Results; Declares $0.05 Fourth Quarter 2006 Cash Dividend; Announces Filing of Amendments to Form 10-Qs for March 2006 and June 2006." Therein, the Company, in relevant part, stated:

> Opteum Inc. (NYSE:OPX) ("Opteum" or "the Company"), a real estate investment trust ("REIT") that operates an integrated mortgage-related securities investment portfolio and mortgage origination platform, today announced financial results for the quarter ended September 30, 2006, and the declaration of a $0.05 fourth quarter 2006 cash dividend. This release should be read in conjunction with Opteum's Quarterly Report on Form 10-Q for the period ended September 30, 2006, which was filed this morning with the Securities and Exchange Commission. The Company also announced the filing of amendments to its Form 10-Qs for the periods ended March 31, 2006 and June 30, 2006.

> **Results of Operations**

> For the nine months ended September 30, 2006, Opteum had a consolidated net loss of $15.6 million, or $(0.64) per weighted average Class A Common Share outstanding, compared with net income of $27.0 million, or $1.27 per weighted average Class A Common Share outstanding, for the nine months ended September 30, 2005.

> *For the three months ended September 30, 2006, Opteum had a consolidated net loss of $6.3 million, or $(0.25) per weighted*

45

*average Class A Common Share outstanding, compared with third quarter 2005 net income of $7.9 million, or $0.37 per weighted average Class A Common Share outstanding.*

Commenting on the results, Jeffrey J. Zimmer, Chairman, President and Chief Executive Officer, said, "We continue to experience extremely challenging operating conditions as our funding costs have accelerated faster than the yields on our portfolio assets over the last two years. Additionally, the aggregate demand for mortgage products and services has declined significantly during the year, which has negatively affected results at our taxable REIT subsidiary, Opteum Financial Services (OFS). *It has been five months since the Federal Reserve last implemented a rate hike. If this neutral policy continues or if the Federal Reserve relaxes monetary policy, the results from operations at both the Opteum REIT and OFS will have the opportunity for improvement. In the meantime, we are aggressively pursuing various funding alternatives to lower our borrowing costs, increase our liquidity and better position us to effectively compete with larger financial institutions that have lower costs of capital."*

\* \* \*

## Book Value Per Share

Opteum's Book Value Per Share increased to $8.41 as of September 30, 2006, from $8.19 as of June 30, 2006, as restated. Book Value Per Share is regularly used as a valuation metric by various equity analysts and may be deemed a non-GAAP financial measure pursuant to Regulation G. Opteum computes "Book Value Per Share" by dividing total stockholders' equity by the total number of shares of Class A Common Stock outstanding. [Emphasis added.]

50.     Also on December 20, 2006, Opteum filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by Defendants Zimmer and Cauley, and reaffirmed the Company's financial results previously announced. The Company's 10-Q also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶42, *supra*. Additionally, the Company, in relevant part, stated:

## Interim Financial Statements

*The accompanying interim financial statements reflect all adjustments, consisting of normal recurring items that, in the opinion of management, are necessary for a fair presentation of the Company's financial position, results of operations, statement of stockholders' equity and cash flows for the periods presented.* These interim financial statements have been prepared in accordance with disclosure requirements for interim financial information and accordingly, they may not include all of the information and footnotes required by U.S. generally accepted accounting principles ("GAAP") for annual financial statements. The operating results for the interim period ended September 30, 2006, are not necessarily indicative of results that can be expected for the year ended December 31, 2006. The operating results of the interim period ended September 30, 2005, do not include the results of OFS, as the merger closed in November 2005. Certain September 30, 2005 amounts were reclassified to conform to the 2006 presentation. The financial statements included as part of this Form 10-Q should be read in conjunction with the financial statements and notes thereto included in the Company's Annual Report on Form 10-K (as amended) for the year ended December 31, 2005.

## Basis of Presentation and Use of Estimates

*The accompanying consolidated financial statements are prepared on the accrual basis of accounting in accordance with GAAP.* The preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Significant estimates affecting the accompanying financial statements include the fair values of MBS, the prepayment speeds used to calculate amortization and accretion of premiums and discounts on MBS, the deferred tax liability valuation, the valuation allowance on mortgage loans held for sale, the valuation of retained interests, trading and the fair value of mortgage servicing rights.

## Consolidation

The accompanying September 30, 2006, consolidated financial statements include the accounts of Opteum and its wholly-owned subsidiary, OFS, as well the wholly-owned and majority-owned subsidiaries of OFS. All inter-company accounts and transactions have been eliminated from the consolidated financial statements.

The financial statements for September 30, 2005, do not include the results of OFS, as the merger was finalized in November 2005.

\* \* \*

## Critical Accounting Policies

***The Company's financial statements are prepared in accordance with U.S. generally accepted accounting principles ("GAAP").*** The Company's significant accounting policies are described in Note 1 to the Company's accompanying Consolidated Financial Statements.

GAAP requires the Company's management to make some complex and subjective decisions and assessments. The Company's most critical accounting policies involve decisions and assessments which could significantly affect our reported assets and liabilities, as well as our reported revenues and expenses.

\* \* \*

## Evaluation of Disclosure Controls and Procedures

***The Company maintains disclosure controls and procedures*** that are designed to ensure that information required to be disclosed in the Company's Exchange Act reports is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and that such information is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure based closely on the definition of "disclosure controls and procedures" in Rule 13a-15(e). In designing and evaluating the disclosure controls and procedures, management recognized that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives and management necessarily was required to apply its judgment in evaluating the cost-benefit relationship of possible controls and procedures.

***As of the end of the period covered by this report, the Company carried out an evaluation, under the supervision and with the participation of the Company's management, including the Company's Chief Executive Officer and the Company's Chief Financial Officer, of the effectiveness of the design and operation of the Company's disclosure controls and procedures. Based on the foregoing, the Company's Chief Executive Officer***

*and Chief Financial Officer concluded that the Company's disclosure controls and procedures were effective.*

## Changes in Internal Controls over Financial Reporting

On November 3, 2005, the Company acquired Opteum Financial Services, LLC, ("OFS") a privately held company. *Management's assessment of the internal controls at the OFS level started with the assumption that OFS, as a private company, may not possess a system of internal controls sufficient to comply fully with all of the rules and requirements for internal control systems for SEC registrants at the time of the acquisition. Accordingly, management conducted a comprehensive review of all controls in place coupled with an assessment of all critical processes so as to ensure full compliance with the rules and requirements for SEC registrants by year end.* This process was a substantial undertaking and required the Company to hire external consultants to assist. As of the dates the Company's quarterly reports for the periods ended March 31, 2006 and June 30, 2006 were filed, this process was not complete. During the period ended September 30, 2006, as part of the process of establishing whether or not the system of internal controls that existed at OFS were sufficient to comply, management discovered a material weakness with respect to the controls in place associated with the accounting by OFS for IRLCs. *Owing to a lack of sufficient internal controls being in place, the accounting treatment utilized to account for IRLCs up to that point was not in compliance with GAAP and the quarterly financial statements issued for the periods ended March 31, 2006 and June 30, 2006 required re-statement. Management has since made changes, where needed, at the OFS level to ensure such system of internal control is adequate to allow management to rely on the OFS internal controls for purposes of preparing the Company's quarterly and annual reports.*

There were no significant changes in the Company's internal control over financial reporting that occurred during the Company's most recent fiscal quarter, other than as reported above, that have materially affected or are reasonably likely to materially affect, the Company's internal control over financial reporting. [Emphasis added.]

51.    On December 21, 2006, the Company issued a press release entitled "Opteum Inc. Sells Equity Stake in Opteum Financial Services; Expects Substantial Mortgage Origination Cost Savings." Therein, the Company, in relevant part, stated:

Opteum Inc. (NYSE:OPX) ("Opteum" or the "Company"), a real estate investment trust ("REIT") that operates an integrated mortgage-related securities investment portfolio and mortgage origination platform, today announced that it has sold a 7.5% non-voting limited liability company membership interest in the Company's wholly owned subsidiary, Opteum Financial Services, LLC ("OFS"), to Citigroup Global Markets Realty Corp. ("Citigroup Realty"), a unit of Citigroup Corporate and Investment Banking, for $4,125,000. The Company also granted Citigroup Realty the option, exercisable at any time before December 21, 2007, to purchase an additional 7.49% non-voting limited liability company membership interest in OFS for $4,119,500. Separately, the Company today announced that it expects substantial cost savings at OFS as a result of amendments to OFS' funding facilities with Citigroup Realty.

*"We are thrilled that Citigroup Realty, a subsidiary of a world-class financial institution, has partnered with us to drive profitable growth at OFS," said Jeffrey J. Zimmer, Chairman, President and Chief Executive Officer of Opteum Inc. "We continue to believe in the value of the OFS franchise and are excited by Citigroup Realty's strong vote of confidence."*

"At OFS, we have long considered Citigroup Realty a strategic business partner and are eager to expand our relationship with them," added Peter R. Norden, Senior Executive Vice President of Opteum Inc. and President and Chief Executive Officer of OFS. *"With lower funding costs and even greater access to capital, we are well positioned to profitably increase our market share as we leverage our multi-channel mortgage origination platform."* [Emphasis added.]

52.   On January 9, 2007, the Company issued a press release entitled "Levine Announces Retirement; Filiberto and Haas Appointed as Co-Chief Operating Officers at Opteum Financial Services, LLC." Therein, the Company, in relevant part, stated:

Opteum Inc. (NYSE:OPX) ("Opteum" or the "Company"), a real estate investment trust ("REIT") that operates an integrated mortgage-related securities investment portfolio and mortgage origination platform, today announced that Martin J. Levine, Co-Founder, Executive Vice President and Chief Operations Officer of the Company's wholly owned subsidiary, Opteum Financial Services, LLC ("OFS"), will be retiring effective March 31, 2007. The Company also today announced the appointment of Robert Filiberto and G. Hunter Haas IV as Co-Chief Operating Officers of

OFS effective immediately. Mr. Levine will continue in his role as Executive Vice President pending his retirement and will work closely with Mr. Filiberto and Mr. Haas until then to ensure a seamless transition of his responsibilities.

* * *

Commenting on Mr. Levine's retirement, Jeffrey J. Zimmer, Chairman, President and Chief Executive Officer of Opteum, stated, *"Marty has been a tremendous resource for OFS since its initial founding. Drawing upon his twenty-plus years of operating experience, Marty has been instrumental in facilitating OFS' transition from a privately held enterprise to a subsidiary of a publicly traded corporation. We are grateful for all of his contributions and, on behalf of all of Opteum's associates, we wish him a long, healthy and prosperous retirement."* [Emphasis added.]

53.     On February 14, 2007, the Company issued a press release entitled "Opteum Inc. Reports Fourth Quarter 2006 and Full-Year 2006 Results." Therein, the Company, in relevant part, stated:

Opteum Inc. (NYSE:OPX) ("Opteum" or the "Company"), a real estate investment trust ("REIT") that operates an integrated mortgage-related securities investment portfolio and mortgage origination platform, today announced financial results for the fourth quarter and year ended December 31, 2006.

**Summary of Results of Operations**

*For the quarter ended December 31, 2006, Opteum reported a consolidated net loss of approximately $33.9 million, or $(1.38) per Class A Common Share. This includes a $10.0 million loss attributable to an other than temporary impairment as of December 31, 2006, of certain mortgage-backed security ("MBS") portfolio assets that we have sold or intend to sell during the first quarter of 2007.* Accumulated Other Comprehensive Loss has been reduced by a corresponding amount and these MBS assets will be reflected on our balance sheet at fair market value as of December 31, 2006. Any difference between the fair market value of these MBS assets as of December 31, 2006, and the amounts ultimately realized upon the sale of such MBS assets will be reflected as a gain or loss in our first quarter 2007 earnings. *We currently estimate that our first quarter 2007 earnings will include a loss of approximately $1.1 million related*

*to the sale of these MBS assets.* For the fourth quarter of 2005, Opteum reported a consolidated net loss of $2.7 million, or $(0.12) per Class A Common Share.

*For the year ended December 31, 2006, Opteum reported a consolidated net loss of approximately $49.5 million, or $(2.02) per Class A Common Share, compared with consolidated net income of $24.3 million, or $1.03 per Class A Common Share, for the year ended December 31, 2005.*

## Book Value per Share

The Company currently estimates that its Book Value per Share as of December 31, 2006, was approximately $7.85 compared with $8.41 as of September 30, 2006. Book Value per Share is regularly used as a valuation metric by various equity analysts that follow the Company and may be deemed a non-GAAP financial measure pursuant to Regulation G. The Company computes Book Value per Share by dividing total stockholders' equity by the total number of shares outstanding of the Company's Class A Common Stock.

## Management Commentary

Commenting on the Company's 2006 fourth quarter and full-year results, Jeffrey J. Zimmer, Chairman, President and Chief Executive Officer, said, "There is nothing we dislike more than reporting negative operating results. *The Company had one of the best records of earnings and dividends among our New York Stock Exchange-traded peer group during 2004 and 2005, but in 2006 we underperformed much of the peer group,* which was understandably reflected in our stock price. *Challenging business and operating conditions during 2006 resulted in inferior financial performance in both of our business units. The Company's investment portfolio produced losses during the second half of the year as higher borrowing costs - the result of two years of increases in the Federal Funds Rate - finally surpassed the gross yield on our portfolio assets.* The sale of certain MBS assets during the first quarter of 2007 is intended to enable the Company to realize a positive net interest margin profit at a faster pace. The Company's taxable REIT subsidiary and mortgage origination platform, *Opteum Financial Services, LLC ("OFS"), has posted losses for four consecutive quarters, primarily due to four reasons: stiff competition for mortgage loans during a period when the number of loans originated declined nationwide, high debt costs, certain operating inefficiencies and a substantial increase during the fourth quarter in loan loss reserves due to anticipated increases in early*

*payment defaults on fourth quarter 2006 originations. Despite the Company's recent operating losses, however, we are optimistic about the opportunities that lie ahead in 2007. Actions have been taken and additional actions are being evaluated to create a path to profitability in the near future."*

\* \* \*

## Loan Loss Reserves

The Company's total loan loss provision in 2006 was $13.3 million. Of that amount, $7.3 million was reserved in the fourth quarter of 2006. The actual loan losses realized in 2006 were $7.5 million, $3.3 million of which were realized during the fourth quarter of 2006. The additional reserves were due to anticipated increases in early payment defaults on fourth quarter 2006 originations. As of December 31, 2006, the Company's valuation allowance for loan losses was $8.0 million, compared with $2.2 million as of December 31, 2005.

\* \* \*

## Opteum Financial Services

During the fourth quarter of 2006, OFS originated or purchased $1.6 billion in mortgages, compared with $1.59 billion originated or purchased during the fourth quarter of 2005. For the full-year 2006, OFS originated or purchased $6.31 billion in mortgages, which was down 2.8% from the $6.49 billion originated or purchased in 2005. However, the nearly flat levels for 2006 versus 2005 are differentiated by the 21.0% year-over-year decline in the higher-margin OFS retail business versus the 13.0% increase in the lower-margin OFS conduit business. Year-over-year wholesale originations and purchases were up 0.2%.

Actual margins associated with sales of mortgage loans at OFS during 2006 were less on average during the year than had been anticipated due largely to stiff competition in the marketplace for mortgage originations. The difference in actual margin represents the largest component of operating losses incurred in 2006. *Exacerbating these lower-than-expected loan sale margins was an increase in loan loss reserves as a result of increases in early payment defaults on fourth quarter 2006 originations, a decline in value of OFS's retained interests in securitizations, and net losses on hedge transactions related to both mortgage servicing rights and the retained interests.*

53

In response to these results and to the secular development of brokerage firms acquiring mortgage lenders that are then provided with significantly lower funding costs, the Company's management team worked closely with key lenders to improve asset funding rates and initial margin rates. In late December 2006, the Company announced the sale to Citigroup Global Markets Realty Corp. ("Citigroup Realty") of a 7.5% non-voting Class B limited liability company membership interest in OFS and amendments to OFS's financing facilities with Citigroup Realty that *the Company currently believes, based on 2007 projected production levels, will lead to approximately $5.5 million to $6 million in savings at OFS*.

\* \* \*

The expected recovery in the Company's Book Value per Share discussed above will not be fully realized if OFS's results do not improve. *However, the OFS management team believes the combination of its new funding terms, cost savings associated with its reduction in staff, and access to Citigroup Realty's capital markets expertise will lead to breakeven or positive monthly results at OFS by mid-2007.*

\* \* \*

*"The Board of Directors and our senior management team believe that the implementation of recent operating changes will lead to positive operating results during 2007. I look forward to making that promise a reality so all of our shareholders can realize a positive return on their investment,"* Zimmer concluded. [Emphasis added.]

54.     On March 14, 2007, Opteum filed its 2006 Annual Report with the SEC on Form 10-K. The Company's 10-K was signed by the Individual Defendants, and reaffirmed the Company's financial results previously announced on February 14, 2007. The Company's 10-K also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶42, *supra*. Additionally, the Company, in relevant part, stated:

## Basis of Presentation and Use of Estimates

*The accompanying consolidated financial statements are prepared on the accrual basis of accounting in accordance with generally accepted accounting principals ("GAAP").* The

54

preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Significant estimates affecting the accompanying financial statements include the fair values of MBS, the prepayment speeds used to calculate amortization and accretion of premiums and discounts on MBS, the deferred tax liability valuation, the valuation allowance on mortgage loans held for sale, the valuation of retained interests, trading and the fair value of mortgage servicing rights. Certain December 31, 2005 and 2004 amounts were reclassified to conform to the 2006 presentation.

## Consolidation

Opteum owned 100% of OFS until December 21, 2006, when a Class B non-voting interest representing 7.5% of OFS's then outstanding Limited Liability Company membership interest was sold to Citigroup Realty. Citigroup Realty's proportionate share in the after-tax results of OFS's operations are shown in the accompanying consolidated statements of operations, and Citigroup Realty's interests in the net equity of OFS is reflected as a liability on the accompanying consolidated balance sheets.

The accompanying 2006 consolidated financial statements include the accounts of Opteum and its majority-owned subsidiary, OFS, as well the wholly-owned and majority owned subsidiaries of OFS. All inter-company accounts and transactions have been eliminated from the consolidated financial statements.

\* \* \*

## CRITICAL ACCOUNTING POLICIES & ESTIMATES

*The Company's financial statements are prepared in accordance with U.S. generally accepted accounting principles ("GAAP").* The Company's significant accounting policies are described in Note 1 to the Company's accompanying Consolidated Financial Statements.

\* \* \*

## Risk Management Approach

*Opteum seeks to differentiate itself from other mortgage portfolio managers through its approach to risk management.* It invests in a limited universe of mortgage related securities, primarily, but not

limited to, those issued by Fannie Mae, Freddie Mac and Ginnie Mae. Payment of principal and interest underlying securities issued by Ginnie Mae is guaranteed by the U.S. Government. Fannie Mae and Freddie Mac mortgage related securities are guaranteed as to payment of principal and interest by the respective agency issuing the security. Opteum seeks to manage the risk of prepayments of the underlying mortgages by creating a diversified portfolio with a variety of prepayment characteristics. Finally, *Opteum seeks to address interest rate risks by managing the interest rate indices and borrowing periods of its debt, as well as through hedging against interest rate changes.*

*Opteum has implemented a risk-based capital methodology patterned on the general principles underlying the proposed risk-based capital standards for internationally active banks* of the Basel Committee on Banking Supervision, commonly referred to as the Basel II Accord. The Basel II Accord encourages banks to develop methods for measuring the risks of their banking activities to determine the amount of capital required to support those risks. *Similarly, Opteum uses its methodology to calculate an internally generated risk measure for each asset in its portfolio. This measure is then used to establish an appropriate amount of leverage. Opteum expects its risk management program to reduce its need to use hedging techniques.*

\* \* \*

## Evaluation of Disclosure Controls and Procedures

*The Company maintains disclosure controls and procedures* that are designed to ensure that information required to be disclosed in the Company's reports filed with or submitted to the Securities and Exchange Commission (the "SEC") pursuant to the Securities Exchange Act of 1934, as amended (the "Exchange Act"), is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and that such information is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure based closely on the definition of "disclosure controls and procedures" in Rule 13a-15(e). ...

*As of the end of the period covered by this report, the Company carried out an evaluation, under the supervision and with the participation of the Company's management, including the Company's Chief Executive Officer and the Company's Chief Financial Officer, of the effectiveness of the design and*

*operation of the Company's disclosure controls and procedures.
Based on the foregoing, the Company's Chief Executive Officer
and Chief Financial Officer concluded that the Company's
disclosure controls and procedures were effective.*

## Changes in Internal Controls over Financial Reporting

On November 3, 2005, the Company acquired Opteum Financial Services, LLC, ("OFS") a privately held company. Management's assessment of the internal controls at the OFS level started with the assumption that OFS, as a private company, may not possess a system of internal controls sufficient to comply fully with all of the rules and requirements for internal control systems for SEC registrants at the time of the acquisition. Accordingly, management conducted a comprehensive review of all controls in place coupled with an assessment of all critical processes so as to ensure full compliance with the rules and requirements for SEC registrants by year end. This process was a substantial undertaking and required the Company to hire external consultants to assist. As of the dates the Company's quarterly reports for the periods ended March 31, 2006 and June 30, 2006 were filed, this process was not complete. During the period ended September 30, 2006, as part of the process of establishing whether or not the system of internal controls that existed at OFS were sufficient to comply, *management discovered a material weakness with respect to the controls in place associated with the accounting by OFS for IRLCs. Owing to a lack of sufficient internal controls being in place, the accounting treatment utilized to account for IRLCs up to that point was not in compliance with GAAP and the quarterly financial statements issued for the periods ended March 31, 2006 and June 30, 2006 required re-statement.* Management made changes during the fourth quarter of 2006, where needed, at OFS to ensure such system of internal control is adequate to allow management to rely on the OFS internal controls for purposes of preparing the Company's Exchange Act reports.

There were no significant changes in the Company's internal control over financial reporting that occurred during the Company's most recent fiscal quarter, other than as reported above, that have materially affected or are reasonably likely to materially affect, the Company's internal control over financial reporting. [Emphasis added.]

55.    On March 20, 2007, in response to a critical analyst report, the Company issued a

press release entitled "Opteum Inc. Comments on FBR Research Report" Therein, the Company,

in relevant part, stated:

> March 20, 2007--Opteum Inc. (NYSE:OPX) wishes to make several observations in response to a research report released this morning by Friedman Billings Ramsey and Company, Inc.
>
> 1. The report questions whether the Company will continue to be able to secure covenant waivers on its warehouse lines of credit. As the Company stated in its Form 10-K filed March 14, 2007 with the Securities and Exchange Commission, *the Company has secured all waivers needed to date*.
>
> 2. The Company has incurred a total of just $8 million of margin calls on its warehouse lines in 2007.
>
> 3. The Company has produced approximately $44 million of sub prime mortgages in 2007 which represents approximately 4.8% of 2007 year to date loan production of approximately $916 million. Forty-four percent of the $44 million (approximately $19 million) subprime mortgages were underwritten by a third party buyer and sold directly to that buyer. *The Company no longer underwrites sub prime mortgages. The Company believes that it is adequately reserved for early payment defaults related to sub prime mortgages as well as all other mortgages.*
>
> 4. The research report questions whether Opteum Inc. (NYSE: "OPX") is a going concern. The Company completed its 2006 audit last week and the Company received a clean audit opinion and is a going concern. The Company continues to believe it has very adequate liquidity. *The Company currently owns approximately $3 billion in agency mortgage related assets, the value of which has increased during 2007 as rates have declined. These agency assets are guaranteed by an agency of the Unites States Government.*
>
> 5. *The Company continues to believe that the carrying value of the servicing rights on its balance sheet correctly reflects the value of the servicing rights.* The changes in the value of the servicing rights have been related to changes in prepayment speed assumptions. The changes in prepayment assumptions also apply to our retained interests in securitizations. *Losses continue to run, in the aggregate, in line with expectations.* [Emphasis added.]

56.    On April 20, 2007, the Company issued a press release entitled "Opteum to Exit Conduit and Wholesale Lending Business." Therein, the Company, in relevant part, stated:

Opteum Inc. (NYSE:OPX) ("Opteum" or the "Company"), a real estate investment trust ("REIT") that operates an integrated mortgage-related investment portfolio and mortgage origination platform, ***today announced that its subsidiary, Opteum Financial Services, LLC ("OFS"), intends to exit its Conduit and Wholesale mortgage loan origination businesses. OFS has ceased accepting new applications in each of these origination channels, effective immediately***. These actions are due primarily to the deterioration in the secondary market for closed mortgage loans and continuing weakness in consumer demand for mortgage products and services.

\* \* \*

"Recently, some secondary market investors in closed mortgage loans have changed their terms and have delayed settling whole loan trades involving certain Alt-A mortgage products. ***This has forced OFS to re-market loans in respect of which it believed it had already obtained purchasing commitments, and has resulted in an estimated $22 million pre-tax loss associated with mortgage loans originated by OFS***. This loss will be reflected in the Company's first quarter results. Because we believe that the current adverse market environment may continue in coming quarters, ***we intend to exit the Conduit and Wholesale mortgage origination businesses***," Mr. Zimmer continued. [Emphasis added.]

57.    On May 7, 2007, the Company issued a press release entitled "Opteum to Sell Retail Mortgage Origination Platform for an Estimated $5 Million Plus Assumption of Certain Liabilities." Therein, the Company, in relevant part, stated:

Opteum Inc. (NYSE:OPX) ("Opteum" or the "Company"), a real estate investment trust ("REIT"), today announced that its subsidiary, Opteum Financial Services, LLC ("OFS"), has entered into a definitive agreement with Prospect Mortgage Company, LLC, ***concerning the sale of substantially all of the assets related to OFS's retail mortgage origination business (the "Business") and certain other assets associated with OFS's corporate staff functions for an estimated aggregate purchase price of $5 million*** plus the assumption of certain lease and other liabilities related to the Business and the assets being sold. The transaction, which is subject to certain closing conditions, is scheduled to be completed during the second quarter of 2007.

"Given the reduced demand for mortgage products and services and the deterioration in the secondary market for closed mortgage

loans, *this transaction will enable us to refocus our energies on managing and growing our RMBS portfolio, while stemming OFS's losses associated with mortgage originations*," said Jeffrey J. Zimmer, Chairman, President and Chief Executive Officer. "Upon completion of this transaction and the wind down of OFS's Conduit and Wholesale mortgage origination divisions, we will be out of the mortgage origination business entirely. *Certain costs associated with exiting the mortgage origination business will be reflected in our first quarter and second quarter results," Mr. Zimmer added.* [Emphasis added.]

58.     The statements contained in ¶¶ 38 – 57 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that the Company's integration of OFS was not proceeding according to plan; (2) that the Company's risk management controls and procedures were incompatible with OFS' risk management controls and procedures; (3) that OFS' loans were designed to produce short-term financial results, which would subject the Company to unreasonable long-term risk and expenses; (4) that the Company had improperly valued and monitored collateral; (5) that the Company had underreported its loan loss reserves; (6) that the Company's book value and projected cash flows were materially overstated; (7) that the Company had failed to adequately hedge its exposure to losses; (8) that the Company and OFS lacked adequate internal and financial controls; (9) that the Company's financial statements were not prepared in accordance with GAAP; (9) that, as a result of the above, the Company's financial statements were false and misleading at all relevant times; and (10) that, as a result of the foregoing, the Company's guidance about its 2007 financial and operational results were lacking in any reasonable basis when made.

## The Truth Begins to Emerge

59.     On May 10, 2007, the Company shocked investors when it issued a press release entitled "Opteum Inc. Reports First Quarter 2007 Results." Therein, the Company, in relevant part, stated:

**76.5% of First Quarter Net Loss Attributable To:**

- **$37.4 Million Valuation Allowance on OFS's Deferred Tax Assets**

- **$12.2 Million Negative Fair Value Adjustment to OFS's Mortgage Servicing Rights**

- **$1.3 Million Negative Fair Value Adjustment to OFS's Residuals**

- **$8.8 Million in Asset Write Downs at OFS**

Opteum Inc. (NYSE:OPX) ("Opteum" or the "Company"), a real estate investment trust ("REIT"), today *reported a consolidated net loss of $78.1 million, or $(3.14) per Class A Common Share* for the three month period ended March 31, 2007, compared to a consolidated net loss of $8.0 million, or $(0.34) per Class A Common Share, for the prior year period. *The Company's first quarter results were significantly impacted by operations at the Company's majority-owned subsidiary, Opteum Financial Services, LLC ("OFS").*

*Nearly 50% of the Company's first quarter net loss, or $37.4 million, was attributable to a valuation allowance on OFS's deferred tax assets. Nearly 17.5% of the first quarter net loss was attributable to negative fair value adjustments to OFS's mortgage servicing rights and retained interests in securitizations. Slightly more than 10% of the first quarter net loss was attributable to asset write downs at OFS due in part to the Company's decision to exit the mortgage origination business.*

### Details of Results of Operations

The Company's first quarter consolidated results include net interest income of $1.9 million, other income of $1.4 million, gross servicing fee income of $7.6 million, *a $12.2 million negative fair value adjustment to mortgage servicing rights* (inclusive of $4.7 million of run-off), an *$18.0 million loss on mortgage banking activities, $0.8 million in losses on the sale of mortgage-backed securities, a $17.8 million provision associated with an increase in the Company's loan loss reserve, $8.8 million in asset write downs at OFS*, $20.6 million in operating expenses, an income tax provision of $11.5 million (inclusive of a $37.4 million valuation allowance on deferred tax assets) and $0.8 million of minority interest in OFS's loss.

*The Company's $18.0 million first quarter loss on mortgage banking activities includes a $14.1 million negative fair value adjustment to mortgage loans held for sale and interest rate lock commitments, a $1.3 million negative fair value adjustment to retained interests in securitizations and hedging losses of $4.6 million.* As of March 31, 2007, the Company's loan loss reserve was $17.9 million, compared with $8.0 million as of December 31, 2006, and $2.2 million as of December 31, 2005.   [Emphasis added.]

60.   On this news, shares of the Company's stock fell $1.37 per share, or over 25 percent, to close on May 11, 2007 at $4.08 per share, on unusually heavy trading volume.

## POST CLASS PERIOD DISCLOSURES

61.   On July 2, 2007, the Company issued a press release entitled "Opteum Financial Services, LLC Completes Sale of Retail Mortgage Origination Business; Opteum Inc. Announces Resignation of Peter R. Norden." Therein, the Company, in relevant part, stated:

Opteum Inc. (NYSE:OPX) ("Opteum" or the "Company"), a real estate investment trust ("REIT"), today announced that its majority-owned subsidiary, Opteum Financial Services, LLC ("OFS"), has completed the sale, effective June 30, 2007, of substantially all of the assets related to OFS's retail mortgage loan origination business (the "Business"), and certain other assets associated with OFS's corporate staff functions, for $1.5 million plus the assumption of approximately $4 million in lease obligations and other liabilities related to the Business and the assets being sold.

Commenting on the transaction, Jeffrey J. Zimmer, Chairman, President and Chief Executive Officer of Opteum Inc., said, "Although the purchase price was less than we originally expected, we are pleased to announce that, with the consummation of this transaction, we have completely exited the mortgage loan origination business." Mr. Zimmer continued, *"OFS has been a significant drain on our earnings and we will now focus our energies on managing and growing our RMBS portfolio as we restore our profitability. We will also continue to own OFS's residual interests in securitizations and mortgage servicing rights. However, we may seek to sell all or a portion of these assets depending on market conditions."*

62

*In conjunction with the sale of the Business, Peter R. Norden resigned his position as Senior Executive Vice President and as a member of the Board of Directors of Opteum Inc. effective June 29, 2007. Mr. Norden also resigned his position as President, Chief Executive Officer and Co-Head of Capital Markets of OFS.* Mr. Norden served as a member of the Board of Directors of Opteum Inc. since the acquisition of OFS on November 3, 2005.

62.   On August 10, 2007, the Company issued a press release entitled "Opteum Inc. Files Form 12b-25; Provides Guidance on Second Quarter 2007 Results; Provides MBS Portfolio Information as of June 30, 2007." Therein, the Company, in relevant part, further revealed:

**MBS Portfolio Remains 100% Invested in Agency MBS**

**All Margin Calls Have Been Satisfied**

**Funding Lines Remain Intact**

Opteum Inc. (NYSE:OPX) ("Opteum" or the "Company"), a real estate investment trust ("REIT"), today announced that it has filed a Form 12b-25 with the Securities and Exchange Commission in respect of its Quarterly Report on Form 10-Q for the period ended June 30, 2007. The Company today also announced preliminary estimates of its second quarter results of operations and Book Value Per Share at June 30, 2007. These estimates are subject to continuing review by the Company's independent registered public accounting firm and are subject to change. As previously announced, the Company expects to report its definitive second quarter results and file its second quarter Form 10-Q on Tuesday, August 14, 2007. The Company today also announced the June 30, 2007, composition of the Company's investment portfolio of residential mortgage-backed securities ("MBS"). This information appears in the tables at the end of this press release.

**Book Value Per Share**

*The Company estimates its Book Value Per Share at June 30, 2007, at approximately $1.17 compared with $4.80 as of March 31, 2007. Book Value Per Share is regularly used as a valuation metric* by various equity analysts that follow the Company and may be deemed a non-GAAP financial measure pursuant to Regulation G. The Company computes Book Value Per Share by dividing total stockholders' equity by the total number of shares outstanding of the Company's Class A Common Stock.

### Estimated Second Quarter Results of Operations

*The Company presently estimates a consolidated net loss of approximately $162.5 million, or approximately ($6.53) per Class A Common Share for the three-month period ended June 30, 2007. The Company presently estimates its second quarter loss from continuing operations at approximately $82.0 million and losses from discontinued operations, net of tax, of approximately $80.5 million.* Discontinued operations refer to the mortgage loan origination operations previously conducted by the Company's majority-owned subsidiary, Orchid Island TRS, LLC ("OITRS").

### Estimated Second Quarter Results of Continuing Operations

*The Company's estimated second quarter loss from continuing operations includes an estimated realized loss of approximately $18.6 million on the sale of MBS and an estimated other-than-temporary impairment charge of approximately $55.3 million on MBS previously held in an unrealized loss position.* In accordance with U.S. generally accepted accounting principles ("GAAP"), the Company previously reported the unrealized losses on MBS that were held as available for sale securities as accumulated other comprehensive loss ("AOCI") on the Company's consolidated balance sheet.

\* \* \*

### Estimated Second Quarter Results of Discontinued Operations

*The Company's estimated second quarter losses from discontinued operations of approximately $80.5 million,* net of tax, include an estimated *$10.5 in losses on sales of assets of the discontinued operations*, net of tax, and an estimated *$70.0 million in losses from discontinued operations*, net of tax. The estimated $70.0 million in losses from discontinued operations, net of tax, includes *an estimated $26.2 million negative fair value adjustment to the Company's retained interests in securitizations.* [Emphasis added.]

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

63.    This is a federal class action on behalf of those who purchased or otherwise acquired Opteum's common stock pursuant or traceable to the Company's September 17, 2004 IPO or the Company's December 16, 2004 Secondary Offering, and including those who

purchased or otherwise acquired the Company's common stock between November 3, 2005 and May 10, 2007, inclusive (the "Class Period"), and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

64.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Opteum's common stock was actively traded on the New York Stock Exchange ("NYSE").  While the exact number of Class members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Opteum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

65.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

66.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

67.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Opteum; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

68.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

69.    The market for Opteum's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Opteum's common stock traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired Opteum's common stock relying upon the integrity of the market price of Opteum's common stock and market information relating to Opteum, and have been damaged thereby.

70.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Opteum's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented

66

the truth about the Company, its business and operations, as alleged herein.

71.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Opteum's financial well-being, business relationships, and prospects. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Opteum and its financial well-being, business relationships, and prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

72.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

73.     During the Class Period, Plaintiffs and the Class purchased common stock of Opteum at artificially inflated prices and were damaged thereby. The price of Opteum's common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

74.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were

materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Opteum, their control over, and/or receipt and/or modification of Opteum's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Opteum, participated in the fraudulent scheme alleged herein.

75.     Additionally, the Company used the artificially inflated price of its securities to consummate the November 3, 2005 merger between Bimini Mortgage Management, Inc. and Opteum Financial Services, LLC by issuing approximately 3.7 million shares of Class A Common Stock and 1.8 million of Convertible Preferred Shares.

<b>Applicability of Presumption of Reliance:<br>
<u>Fraud On The Market Doctrine</u></b>

76.     At all relevant times, the market for Opteum's common stock was an efficient market for the following reasons, among others:

(a)     Opteum's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Opteum filed periodic public reports with the SEC and the NYSE;

(c)     Opteum regularly communicated with public investors <u>via</u> established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as

communications with the financial press and other similar reporting services; and

(d)    Opteum was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

77.    As a result of the foregoing, the market for Opteum common stock promptly digested current information regarding Opteum from all publicly-available sources and reflected such information in Opteum's stock price. Under these circumstances, all purchasers of Opteum common stock during the Class Period suffered similar injury through their purchase of Opteum common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

78.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Opteum who knew that those statements were false

when made.

## FIRST CLAIM
### Violation of Section 11 of
### The Securities Act Against All Defendants

79.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the defendants to defraud Plaintiffs or members of the Class.  This count is predicated upon defendants' strict liability for making false and materially misleading statements in the Registration Statement and Prospectus.

80.     This claim is asserted by Plaintiffs against all defendants by, and on behalf of, persons who acquired shares of the Company's common stock pursuant to or traceable to the false Registration Statement issued in connection with the Company's September 17, 2004 IPO or the Prospectus issued in connection with the Company's December 16, 2004 Secondary Offering.

81.     Individual Defendants as signatories of the Registration Statement or Prospectus, as directors and/or officers of Opteum and controlling persons of the issuer, owed to the holders of the stock obtained through the Registration Statement or Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement or Prospectus at the time they became effective to ensure that such statements were true and correct, and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.  Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement or Prospectus as set forth herein.  As such, defendants are liable to the Class.

70

82.   Underwriter Defendants owed to the holders of the stock obtained through the Registration Statement or Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement or Prospectus at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.  Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement and Prospectus, as set forth herein.  As such, defendants are liable to the Class.

83.   None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement or Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

84.   Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Registration Statement and Prospectus, which misrepresented or failed to disclose, *inter alia*, the facts set forth above.  By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

85.   As a direct and proximate result of defendants' acts and omissions in violation of the Securities Act, the market price of Opteum's common stock sold in the IPO was artificially inflated, and Plaintiffs and the Class suffered substantial damage in connection with their ownership of Opteum's common stock pursuant to the Registration Statement or Prospectus.

86.   Opteum is the issuer of the stock sold <u>via</u> the Registration Statement and Prospectus.  As issuer of the stock, the Company is strictly liable to Plaintiffs and the Class for

the material misstatements and omissions therein.

87.     At the times they obtained their shares of Opteum, Plaintiffs and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

88.     This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement which should have been made through the exercise of reasonable diligence, and within three years of the effective date of the Prospectus.

89.     By virtue of the foregoing, Plaintiffs and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the defendants and each of them, jointly and severally.

## SECOND CLAIM
### Violation of Section 12(a)(2) of
### The Securities Act Against All Defendants

90.     Plaintiffs repeat and realleges each and every allegation contained above as if fully set forth herein.

91.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all defendants.

92.     Defendants were sellers, offerors, and/or solicitors of purchasers of the shares offered pursuant to the Opteum IPO Registration Statement and Secondary Offering Prospectus.

93.     The Opteum Registration Statement and Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.  The Individual Defendants' actions of solicitation included participating in the preparation of the false the misleading Registration Statement and Prospectus.

94.   Defendants owed to the purchasers of Opteum's common stock, including Plaintiffs and other members of the Class, the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Registration Statement and Prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the Registration Statement and Prospectus, as set forth above.

95.   Plaintiffs and other members of the Class purchased or otherwise acquired Opteum's common stock pursuant to and/or traceable to the defective Registration Statement or Prospectus.  Plaintiffs did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Registration Statement and Prospectus.

96.   Plaintiffs, individually and representatively, hereby offer to tender to defendants that common stock which Plaintiffs and other Class members continue to own, on behalf of all members of the Class who continue to own such common stock, in return for the consideration paid for that common stock together with interest thereon.  Class members who have sold their Opteum common stock are entitled to rescissory damages.

97.   By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated Section 12(a)(2) of the Securities Act.  Accordingly, Plaintiffs and members of the Class who hold Opteum common stock purchased in the IPO or Secondary Offering have the right to rescind and recover the consideration paid for their Opteum common stock, and hereby elect to rescind and tender their Opteum common stock to the defendants sued herein.  Plaintiffs and Class members who have sold their Opteum common stock are entitled to

73

rescissory damages.

98.     This action is brought within three years from the time that the common stock upon which this Count is brought was sold to the public, and within one year from the time when Plaintiffs discovered or reasonably could have discovered the facts upon which this Count is based.

## THIRD CLAIM
### Violation of Section 15 of The Securities Act
### Against the Individual Defendants

99.     Plaintiffs repeat and reallege each and every allegation contained above, excluding all allegations above that contain facts necessary to prove any elements not required to state a Section 15 claim, including without limitation, scienter.

100.    This count is asserted against Individual Defendants and is based upon Section 15 of the Securities Act.

101.    Individual Defendants, by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Opteum within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Opteum to engage in the acts described herein.

102.    Individual Defendants' position made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiffs and the Class.

103.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiffs and the Class for damages suffered.

## FOURTH CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

104.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

105.   During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Opteum's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

106.   Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Opteum's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

107.   Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Opteum's financial well-being, business relationships, and prospects, as specified herein.

108.   These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Opteum's value and

75

performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Opteum and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Opteum common stock during the Class Period.

109.   Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

110.   The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing Opteum's financial well-being, business relationships, and prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being, business relationships, and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

111.   As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Opteum common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Opteum's common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiffs and the other members of the Class acquired Opteum's common stock during the Class Period at artificially high prices and were damaged thereby.

112.   At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that Opteum was experiencing, which were not disclosed by defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Opteum common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

113.   By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

114.   As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## FIFTH CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

115.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

116.   The Individual Defendants acted as controlling persons of Opteum within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

117.   In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to

78

control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

118.    As set forth above, Opteum and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, Plaintiffs prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: October 9, 2007
    Boca Raton, FL

Respectfully submitted,

By;_____

WAYNE H. SCHWARTZ (Bar No. 907390
schwartz@leeamlaw.com
ERIC LEE (Bar No. 691299)
lee@leeamlaw.com
LEE & AMTZIS, P.L.
5550 Glades Rd., Ste. 401
Boca Raton, FL  33431
Telephone (561) 981-9988
Facsimile (561) 981-9980

- and -

**SCHIFFRIN BARROWAY**
**TOPAZ & KESSLER, LLP**
Richard A. Maniskas
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (fax)

- and -

**BRODSKY & SMITH, LLC**
Evan J. Smith
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
(610) 667-6200
(610) 667-9029 (fax)

**Attorneys for Plaintiffs**

**PLAINTIFF'S CERTIFICATION**

I, (Mr./Ms.) Richard A. + Linda K. Coy ("Plaintiff") declare under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in ___BPX___ of securities during the Class Period specified in the Complaint are as follows (use additional sheet if necessary):

| Date | # of Shares Purchased | # of Shares Sold | Price |
|---|---|---|---|
| 7-11-2006 | 46.0465 | 0 | $400.00 |

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed as follows:]

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28 day of September, 2007.   Sign Name: Richard A. Coy   Linda K. Coy

# CIVIL COVER SHEET

JS 44 (Rev. 11-05)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Richard and Linda Coy, individually and on behalf of all others similarly situated

**DEFENDANTS**
Opteum Inc., et al

(b) County of Residence of First Listed Plaintiff **Suffolk city County**
(EXCEPT IN U.S. PLAINTIFF CASES) **Virginia**

County of Residence of First Listed Defendant **Indian River**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

07-14305

(c) Attorney's (Firm Name, Address, and Telephone Number)
Wayne H Schwartz
Lpf + Amtzis, P.L.
5550 Glades Rd., Suite 401
Boca Raton FL 33431
(561) 981-9988

Attorneys (If Known)

07CV14305-CV-Martinez/Lynch

(d) Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☒ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability   ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability   ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability   **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability   ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury   ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting   ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment   **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations   ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare   ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other   ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights   ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☒ NO   b) Related Cases ☒ YES ☐ NO
JUDGE **Graham**   DOCKET NUMBER **07-14278-DLG**

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Securities Act of 1933
Exchange Act of 1934
LENGTH OF TRIAL via **7** days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
DATE **10-9-07**

FOR OFFICE USE ONLY
AMOUNT **350.00**   RECEIPT # **232508**   IFP